*J. R. Swan, J.
The question made in this case is, whether, if a debtor transfers to his creditor a negotiable note before due, as collatei’al security to a pre-existing debt, without any consideration other than the mere fact of a prior indebtedness (for all other consideration, in the case before us, is repelled by the testimony, particularly the testimony of the plaintiffs), the creditor holds it dichargod from all defenses and equities existing between the maker and debtor.
There are many rules of law which, in their application to particular cases, do great injustice, but which are inexorably applied, because the general benefits derived from them can only be obtained by uniform adherence to them ; and the individual cases of hardship are altogether outweighed by the public benefits and public confidence derived from uniform apiffication. Among these rules *452 .are some relating to negotiable paper. The necessities of the commercial world require that bills of exchange and promissory notes .should possess some of the attributes of money and exchangeable value; and to clothe them with these attributes, and to give parties confidence in their reception, it is necessary to protect them in the hands of a holder for value, from defenses growing out of the dealings of the prior parties. The rule frequently operates harshly and unjustly, and, being founded on commercial policy, is •therefore applicable only where the interests of trade require it. Hence the rule, tljatif the holder has not taken the paper for value, or in the usual course of trade, or in ignorance of the defects, he .stands in no better situation than the indorser from whom he received it. Commercial policy does not require such a holder to be protected against the defenses of the prior parties. But if the paper has been transferred before due, in the usual course of trade, for value, to a person who had no notice of such defects, commercial •^policy requires that such bona fide holder shall hold the paper [452 ■discharged from such infirmities. The exceptions above stated are as fundamental as the rule itself. The question now before us, then, is whether the plaintiffs in this case took the paper for value in the usual .course of trade.
The weight of authority seems to settle the principle, that where .a negotiable instrument of a third person is transferred before due, in payment of a pre-existing debt, and is bona fide received by the creditor, without notice, the defense existing as between the prior parties, can not be set up against such holder. Bond v. Central Bank, 2 Kelley (Ga.), 106; Valette v. Mason et al., 1 Ind. (Smith,) 89; Homes et al. v. Smythe, 16 Maine, 177; Williams v. Little, 11 N. H. 66; Reddick v. Jones et al., 6 Iredell, 107; Swift v. Tyson, 16 Pet. 1; Brush v. Scribner, 11 Conn. 388, where the English cases are reviewed; Carlisle v. Wishart, 11 Ohio, 172. The payment of a debt is as much a commercial transaction as a sale of goods ; and if. one parts with his goods or money upon the faith of a transfer of negotiable paper as payment, and is protected from equities, thei’e seems to be an equally good reason for holding, that if one, giving credit to such paper, parts with and discharges an obligation to pay money, he has, in contemplation of law, parted with property of as high a character as goods. After receiving negotiable paper in payment of a pre-existing debt, the creditor can not maintain an action, upon the debt he has thus discharged, merely because the *453, 454 maker of the negotiable paper he has received in payment might have had some defense against it in the hands of the payee, from -whom he received it. For the creditor, having parted with a right, there is a sufficient consideration; and something more is-necessary, to enable him to recover his debt which he has sur453] rendered. He *may be restored to his right to recover the-amount of his debt, if the maker afterward avoids the note or paper in his hands, by a defense which arose prior to the indorsement. But the creditor, having thus parted with his property, is justly remitted to his original right to recover his deb¿, in like manner, and to the like extent, as where the negotiable paper-of a third person is taken for goods sold, upon failure afterward to recover upon the paper transferred in payment of the goods. There is, therefore, no substantial difference between the consideration for the transfer of negotiable paper in payment of a precedent.debt, or in payment of goods sold at the time of such transfer. Such was the principle decided in Swift v. Tyson; 16 Pet. 1, and in relation to which Chancellor Kent, in note to 3 Com. 81 (8 ed. 97, note c), says he is inclined to concur as the plainer and better doctrine.
It will be perceived that the ground upon which the holder of negotiable paper, taken in payment of a precedent debt, is held to 'be a holder for value, is, that he receives the paper as a payment of the original debt, whereby the original debt is, at least for the time being, discharged. The creditor is, in effect,-a purchaser of the negotiable paper ; and for it he parts with the original obligation of the precedent debt, changing thereby his relations to his debtor and the liability of the debtor to him. And it should be borne in mind that it is this new adjustment of the precedent debt that makes the creditor a holder for value. It seemed necessary to briefly refer to these cases in relation to the consideration growing out of the payment of a precedent debt, by the transfer of negotiable paper, to bettor understand the rule in relation to the rights of the holder of negotiable paper received as security merely for a precedent debt.
When the note of a third person is transferred bona fide *before due, as collateral security and for value, such as a loan or further advancement, or a stipulation, express or implied, of further time to pay a pre-existing debt, or a further credit, or a change of securities of a pre-existing debt, or the like, the assignee of such collat'eral will be protected from infirmities affecting the instrument be *455 fore it was thus transferred. If, however, a note is transferred as-collateral security to a pre-existing debt, without any consideration,, so that the transfer is a mere voluntary act on the part of the-debtor, and is received by the creditor without incurring any new responsibility, parting with any right, or subjecting himself to any loss or delay, and leaving the subsisting debt precisely in the condition it was before such collateral was transferred, the holder has-not taken the note for value, nor in the usual course of trade; and to hold otherwise, would be a departure from the established rules-of law governing the rights of parties to negotiable paper, and losing sight of the grounds of public policy upon which the law is-founded.
The case of Coddington v. Bay, 5 Johns. Ch. 54; 20 Johns. 637, has been frequently commented upon, and sometimes treated as a case relating to a transfer of negotiable paper in payment of a precedent debt, and sometimes as a case relating to the transfer of negotiable paper as security merely for liabilities previously incurred.. This confusioi? has arisen from what was said by senators in the-court of errors. Chancellor Kent, in delivering his opinion in the-original case, said: “ The notes were not negotiated to them in the usual course of trade or business, nor in payment of any antecedent and existing debt, nor'for cash, or property advanced, debt created, or responsibility on the strength and credit of the notes.” 5 Johns. Ch. 57. We are not aware of any case which impairs the principle thus s'tated. When collateral security has been taken for *a [455 -precedent debt, courts have, from facts and circumstances, sometimes implied a stipulation on the part of the creditor to give further time for payment, and thus found a consideration for the-transfer of the collateral.' We do not impugn such finding by courts. In the present case, however, any such stipulation, express- or implied, is repelled by the testimony, and did not cnter-into the consideration of the court.
When, then, a debt is created without any agreement for security, and the debtor afterward, without any obligation to do so, as in the-case before us, voluntarily transfers a negotiable instrument to secure the same, and both parties are left in respect to the debt in. statu quo, we are unable to see what value or consideration, recognizable by traders, was paid for the instrument, or how such gratuitous favor can be deemed a usual transaction in the course of trade, or indeed as any trade or reciprocity of values at all. To- *456 "hold that the unchanged condition of the precedent debt formed a present consideration for doing what the obligations of that debt did not require, is raising a consideration by assertion when none in fact exists.
Our view of the law upon this subject is sustained by direct and well-considered adjudications in Maine, Bramhall et al. v. Beckett, 31 Maine, 205; in New Hampshire, Jenness v. Bean, 10 N. H. 266; Williams v. Little, 11 N. H. 66; Virginia, Prentice et al. v. Zane, 2 Grattan, 262; Pennsylvania, Petrie v. Clark, 11 Serg. & R. 377; Kirkpatrick v. Muirhead, 16 Penn. (4 Harris,) 117; Tennessee, Kimbro v. Lytle, 10 Yerg. 417, 428; Mississippi, Brooks et al. v. Whitson, 7 Smedes & Marsh. 513; and New York cases, supra.
The same rule is recognized in North Carolina, Roddick v. Jones, 6 Iredell, 109, per Chief Justice Ruffin.
Some cases are referred to by the court below, and the counsel ■456] for the defendant in error, as adopting a different *rule, which it is proper to notice; for we think it will be found that they do not •conflict with the rules we have stated.
In the case of Atkinson v. Brooks, 26 Vt. 569, it was held that the indorsee of a-bill of exchange, transferred to him as collateral security for a pre-existing debt, past due, is, prima facie, a holder for value, and takes the bill discharged of equities. The court say: “ One would scarcely part with the collateral, unless he expected more or less indulgence on account of it; and when the prior debt is suffered to remain uncollected, it is, under the circumstances, fair to conclude such was the stipulation.” And, in summing up, the court say: “ A note or bill, negotiated in security for a debt not yet due, is not upon sufficient consideration ordinarily, unless the creditor wait, in faith of the collateral, after his debt becomes due. So too, probably, if it was shown, positively, that the holder gave no credit to the indorsed bill, and did, in no sense, conduct differently on that account, he could not be regarded as a holder for value.”
In the case of Gibson et al. v. Conner et al., 3 Kelly (Ga.), 47, it was held that a note, transferred as collateral security for a preexisting debt, came within the common commercial rule. The case is decided upon the authority of the obiter dictum of Justice Story, in the case of Swift v. Tyson, 16 Pet. 1. The court seem to concede that there should be some valuable consideration for the trans-fer, and they say that “ the forbearance to press the debt, which is *457, 458 usually a part of the understanding of the parties in such eases, is-valuable to the transferer.”
In the case of Vallette v. Mason et al., 1 Ind. (Smith,) 89, it does not appear whether the note was transferred as collateral security at the time the debt was created, and as a part of the consideration therefor, or afterward.
*In Palmer v. Richards, 1 Eng. Law & Eq. 529, the [457 drawer of a bill of exchange, which had been accepted, indorsed.it in blank, and delivered it to A, as agent, to get discounted; but A, instead of doing so, negotiated it to B, a bona fide holder, as-security for an advancement of money; and it was held a valid indorsement by the drawer to B.
In Gwynne et al. v. Lee et al., 9 Md. (Gill,) 138; Washington Bank v. Lewis, 22 Pick. 24; Chicopee Bank v. Chapin, 8 Met. 40; the collaterals were transferred as security when the debt was contracted, and formed a consideration for the credit. The same is. fairly to be inferred in the case of Vallette v. Mason et al., 1 Ind. (Smith,) 89.
In Williams v. Smith et al., 2 Hill (N. Y.), 301, the collateralswere transferred as security, upon an agreement to become indorser; and indorsements were afterward made in pursuance of the agreement; and the court held, that the consideration for the-transfer was tantamount to an advance upon a.purchase, and not a. collateral security.
The case of The Bank of the Metropolis v. The New England Bank, 17 Pet. 174; 1 How. S. C., 234, related to mercantile lien,. and has no application to the question before us.
The remark of Judge Martin, in King v. Gayoso, 4 Cond. La. 553, quoted in the opinion below, that a note, or bill negotiated to raise money,'by discount or pledge, may be deemed a transaction.in the usual course of business, is in accordance with our view of the law.
All that is said in Swift v. Tyson, 16 Pet. 20; Blanchard et al. v. Stephens, 3 Cush. 168; Carlisle v. Wishart, 11 Ohio, 172, Poirier v. Morris, 20 Eng. Law & Eq. 103, in regard to the rule to be-adopted where negotiable paper is taken as collateral security, for a pre-existing debt, is obiter; and, if entitled to any weight, does-not sanction the idea, that the creditor receiving such collateral, must be treated *as a holder for value, and in the usual [458 course of trade, where there is no agreement to wait on the prior- *459 -debt, or to forego any right whatever. Nor have we been able to find any ease in which a negotiable instrument had been transferred to a creditor, merely as a collateral security for an existing ■debt, the right of action on the original debt not being altered, no .stipulation, express or implied, for further time to pay existing, or other new consideration intervening, that the creditor has been held to be an indorsee and holder, in, the usual course of trade, for value.
In the case before us, the plaintiffs, when they received the notes .as collateral security, parted with nothing. They gave no credit for them. They are, in no sense, purchasers of the notes. The creditor was to-'derive no benefit, whatever, from their transfer. 'The debt, -which the collaterals secured, was unaffected by the transfer. The transaction was, simply, a naked pledge of negotiable instruments, collateral to a pre-existing debt, without any ,new consideration whatever moving between the parties.
The plaintiffs, therefore, were not holders for value, in the usual ■ course of trade, and the notes in their hands were subject to the . equitable defenses of the maker.
Some apology is needed for occupying so much space in the expression of our views in this case. We entertain the highest respect for the judicial determinations of the Superior Court of Cin.cinnati, in general term; and inasmuch as the grounds of their ■ decision, in this case, have been reported, and involve a very important rule of mercantile law, we deemed it due to the profession, .and to the deserved reputation of the court, whose judgment we reverse, to state, fully, our reasons for so doing.
Bartley, C. J., and Brinkerhoee, Bowen, and Soott, JJ., concurred.